IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA<br>EX REL. KENNETH T. CUCCINELLI, II,<br>  in his official capacity as<br>  Attorney General of Virginia,<br><br>                                   **Plaintiff,**<br>v.<br><br>KATHLEEN SEBELIUS,<br>  Secretary of the Department<br>  of Health and Human Services,<br>  in her official capacity,<br><br>                                   **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 3:10CV188<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

F I L E D

MAR 23 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiff states the following for its Complaint:

### Introduction

1. Section 1501 of the Patient Protection and Affordable Care Act ("PPACA") contains an individual mandate which will require a majority of Virginians after December 31, 2013 to purchase health insurance for themselves and their dependants subject to a civil penalty.

2. At the 2010 Regular Session of the Virginia General Assembly, Virginia Code § 38.2-3430.1:1 was enacted with the assent of the Governor.

3. That statute provides:

> No resident of this Commonwealth, regardless of whether he has or is eligible for health insurance coverage under any policy or program provided by or through his employer, or a plan sponsored by the Commonwealth or the federal government, shall be required to obtain or maintain a policy of individual insurance coverage except as required by a court or the Department of Social Services where an individual is named a party in a judicial or administrative proceeding. No provision of this title shall render a resident of this Commonwealth liable for any penalty, assessment, fee, or fine as a result of his failure to procure or obtain health insurance coverage. This section shall not apply to individuals voluntarily applying for coverage under a state-administered program pursuant to Title XIX or Title XXI of the Social Security Act. This section shall not apply to students being required by an institution of higher education to obtain and maintain health insurance as a condition of enrollment. Nothing herein shall impair the rights of persons to privately contract for health insurance for family members or former family members.

4. Although the federal mandate does not take effect for several years, PPACA imposes immediate and continuing burdens on Virginia and its citizens. The collision between the state and federal schemes also creates an immediate, actual controversy involving antagonistic assertions of right.

5. The individual mandate is an essential element of the act without which it would not have been passed and without which the statutory scheme cannot function.

6. The Federal act contains no severability provision.

**Parties**

7. The Commonwealth of Virginia has an interest in asserting the validity of its anti-mandate enactment. The Virginia enactment is valid despite the Supremacy Clause of the United States Constitution because, as demonstrated below, the individual mandate and PPACA as a whole are unconstitutional.

8. Kathleen Sebelius in her official capacity is principally responsible for administering PPACA.

## Jurisdiction and Venue

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and is authorized to enter Declaratory Judgment pursuant to 28 U.S.C. § 2001 et seq.

10. Venue is proper under 28 U.S.C. § 1391(e)(2).

**Facts**

11. Congress in the past has used its taxing and spending powers to establish social welfare programs such as Social Security and Medicare.

12. Congress lacks the political will to fund comprehensive health care in this way because taxes above those already provided in PPACA would produce too much opposition.

13. The alternative, which was also a centerpiece of the failed Clinton administration health care proposal, is to fund universal health care in part by making healthy young adults and other rationally uninsured individuals cross-subsidize older and less healthy citizens.

3

14. The mandate also relates to disincentives created by PPACA under which it would make no economic sense for the uninsured to pay premiums before becoming ill unless compelled to do so by law.

15. Before passing the act, the Senate evinced doubt that it had the power to adopt the individual mandate under the Commerce Clause, Article I, Section 8 of the Constitution.   As a consequence of these concerns, the Senate Finance Committee asked the Congressional Research Service to opine on the constitutionality of the individual mandate.   The Service replied: "Whether such a requirement would be constitutional under the Commerce Clause is perhaps the most challenging question posed by such a proposal, as it is a novel issue whether Congress may use this Clause to require an individual to purchase a good or a service."   Cong. Research Serv. Requiring Individuals to Obtain Health Insurance: A Constitutional Analysis 3 (2009).

16. In *United States v. Lopez,* 514 U.S. 549 (1995), and *United States v. Morrison,* 529 U.S. 598 (2000), the Supreme Court struck down attempts to regulate non-commercial activities based upon their predicted effects on interstate commerce because those attempts went beyond the outer limits of the Commerce Clause.   *Gonzales v. Raich,* 545 U.S. 1, 25 (2005) ("Despite congressional findings that such crimes had an adverse impact on interstate commerce, we held the statute [in *Morrison*] unconstitutional because, like the statute in *Lopez,* it did not regulate economic activity.").

4

### Count One
### Commerce Clause

17.  The status of being a citizen or resident of the Commonwealth of Virginia is not a channel of interstate commerce; nor a person or thing in interstate commerce; nor is it an activity arising out of or connected with a commercial transaction.  Instead, the status arises from an absence of commerce, not from some sort of economic endeavor, and is not even a non-economic activity affecting interstate commerce.  It is entirely passive.

18.  While the United States Supreme Court has not adopted a categorical rule against aggregating the effects of any non-economic activity in order to find Commerce Clause authority, thus far in our history, it has never been held that the Commerce Clause, even when aided by the Necessary and Proper Clause, can be used to require citizens to buy goods or services.  To depart from that history to permit the national government to require the purchase of goods or services would deprive the Commerce Clause of any effective limits contrary to *Lopez* and *Morrison* and would create powers indistinguishable from a general police power in total derogation of our constitutional scheme of enumerated powers.

19.  Regulation of non-economic activity under the Commerce Clause is possible only through the Necessary and Proper Clause.  *Gonzales v. Raich*, 545 U.S. 1, 39 (2005) (Scalia concurring in the judgment).  The Necessary and Proper Clause confers supplemental authority only when the means adopted to accomplish an enumerated power are "'appropriate,'" are "'plainly adapted' to

5

that end," and are "'consistent with the letter and spirit of the constitution.'"
*Id.* (citing *McCulloch v. Maryland,* 17 U.S. 316, 421 (1819)). Requiring
citizen-to-citizen subsidy or redistribution is contrary to the foundational
assumptions of the constitutional compact.

20. As Justice Chase wrote, almost at the moment of the founding of the country,
in the Supreme Court's first substantive opinion, *Calder v. Bull,* 3 U.S. 386,
388 (1798):

> An ACT of the Legislature (for I cannot call it a law)
> contrary to the great first principles of the social compact,
> cannot be considered a rightful exercise of legislative
> authority. The obligation of a law in governments
> established on express compact, and on republican
> principles, must be determined by the nature of the power,
> on which it was founded. A few instances will suffice to
> explain what I mean. A . . . law that takes property from A
> and gives it to B: It is against all reason and justice, for a
> people to entrust a Legislature with SUCH powers; and
> therefore it cannot be presumed that they have done it.

This analysis applies equally to citizen-to-citizen subsidy and subsidy of
insurance companies by an individual mandate.

WHEREFORE, the Commonwealth of Virginia prays this Court to declare that
§ 1501 of PPACA is unconstitutional because the individual mandate exceeds the
enumerated powers conferred upon Congress. Because the individual mandate is an
essential, non-severable provision, the entire act is likewise invalid. As a
consequence, this Court should also declare that § 38.2-3430.1:1 is a valid exercise
of state power. The Commonwealth additionally prays the Court to grant such

further and additional relief as the ends of justice may require including an injunction against the enforcement of § 1501 in particular and PPACA as a whole.


Respectfully submitted,


<u>E. Duncan Getchell, Jr.</u>
Counsel


KENNETH T. CUCCINELLI, II
Attorney General of Virginia

E. DUNCAN GETCHELL, JR.
Virginia State Bar No. 14156
State Solicitor General
dgetchell@oag.state.va.us
*Counsel of Record*

STEPHEN R. MCCULLOUGH
Virginia State Bar No. 41699
Senior Appellate Counsel
smccullough@oag.state.va.us


CHARLES E. JAMES, JR.
Chief Deputy Attorney General

WESLEY G. RUSSELL, JR.
Virginia State Bar No. 38756
Deputy Attorney General
wrussell@oag.state.va.us

OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, Virginia  23219

Telephone:  (804) 786-2436
Facsimile:   (804) 786-1991

*Counsel for the*
*Commonwealth of Virginia*
*Ex Rel. Kenneth T. Cuccinelli, II*


March 23, 2010