IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA, ) <br> ex rel. Kenneth T. Cuccinelli, II, in his official ) <br> capacity as Attorney General of Virginia, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KATHLEEN SEBELIUS, Secretary of the ) <br> Department of Health and Human Services, ) <br> in her official capacity, ) <br> ) <br> Defendant. ) <br> ) <br> _____) | Civil Action No. 3:10-cv-00188-HEH |

BRIEF OF AMICUS CURIAE PHYSICIAN
HOSPITALS OF AMERICA IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Scott C. Oostdyk (VA Bar # 28512)
James L. Sanderlin (VA Bar # 05878)
J. Tracy Walker, IV (VA Bar # 31355)
H. Carter Redd (VA Bar # 34392)
Virginia L. Hudson (Nesbitt) (VA Bar # 73263)
Matthew D. Fender (VA Bar # 76717)
McGuireWoods LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061

ATTORNEYS FOR AMICUS CURIAE
PHYSICIAN HOSPITALS OF AMERICA

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
INTEREST OF THE AMICUS ............................................................................................... 1
MEMORANDUM OF LAW .................................................................................................... 3
    I.    THE COMMONWEALTH OF VIRGINIA HAS STANDING ............................ 3
    II.   THE MANDATE IS NOT WITHIN CONGRESS'S CONSTITUTIONAL POWERS ................................................................................................................. 4
    III.  THE TAXING POWER DOES NOT SAVE THE STATUTE ............................ 7
CONCLUSION ........................................................................................................................ 10
CERTIFICATE OF SERVICE ............................................................................................... 12

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                          Page(s)

*Baker v. Carr*,
　369 U.S. 186 (1962)................................................................................................................3

*Child Labor Tax Case*,
　239 U.S. 20 (1922).............................................................................................................8, 9

*Diamond v. Charles*,
　476 U.S. 54 (1986)..................................................................................................................3

*Gibbons v. Ogden*,
　22 U.S. (9 Wheat) 1 (1824)....................................................................................................4

*Gonzales v. Oregon*,
　546 U.S. 243 (2006)................................................................................................................3

*Gonzalez v. Raich*,
　545 U.S. 1 (2005).............................................................................................................4,5, 6

*Heart of Atlanta Motel, Inc. v. United States*,
　379 U.S. 241 (1964)................................................................................................................4

*New York v. United States*,
　505 U.S. 144 (1992)............................................................................................................3, 4

*Physician Hospitals of America, et al. v. Sebelius*,
　Case No. 6:10-cv-00277-MHS (E.D. Tex.) ...........................................................................1

*Pollock v. Farmers' Loan & Trust Co.*,
　157 U.S. 429 (1895)...........................................................................................................9, 10

*Sozinsky v. United States*,
　300 U.S. 506 (1937)................................................................................................................7

*United States v. Comstock*,
　___ U.S. ____, No. 08-1224, 2010 U.S. Dist. LEXIS 3879 (2010) ........................................5

*United States v. Lopez*,
　514 U.S. 549 (1995)............................................................................................................4, 5

*United States v. Morrison*,
　529 U.S. 598 (2000)................................................................................................................4

**STATUTES**

26 U.S.C. § 501(c)(6) ........................................................................................................1

Patient Protection and Affordable Care Act of 2010 ............................................. passim

**OTHER AUTHORITIES**

*Black's Law Dictionary* 1594 (Deluxe 9th ed. 2009) ....................................................10

U.S. Const. amend. XVI ............................................................................................9, 10

U.S. Const. art. I, § 8 ....................................................................................................4, 7

U.S. Const. art. I, § 9 .......................................................................................................9

## INTEREST OF THE AMICUS

Physician Hospitals of America ("PHA") is a 26 U.S.C. § 501(c)(6) organization formed to educate members of the physician-owned hospital community about regulatory and legislative issues and to encourage PHA members to advocate for the rights of physician-owned hospitals. PHA has approximately 166 member hospitals in 34 different states, comprising both existing facilities and physician-owned hospitals in various stages of development. PHA member hospitals are typically enrolled as providers under Medicare and Medicaid programs, with up to 70% of their case mix stemming from Medicare and Medicaid patients. The physician owners of PHA member hospitals are also providers under the Medicare and Medicaid programs.

PHA is committed to the sanctity of private property as guaranteed by the Constitution, especially in relation to the rights of physicians to own and operate hospitals and to provide patients with expert, cost-effective, and efficient health care. In *Physician Hospitals of America, et al. v. Sebelius*, Case No. 6:10-cv-00277-MHS, filed June 3, 2010, in the U.S. District Court for the Eastern District of Texas, Tyler Division, PHA, along with a member hospital, is challenging the constitutionality of § 6001 of the Patient Protection and Affordable Care Act of 2010 ("PPACA"), which singles out for negative treatment physician-owned hospitals from among all those owned by persons of any other profession. Section 6001 retroactively prohibits planned, approved, and commenced service facility expansion at approximately 58 Medicare-certified hospitals solely because they are owned by physicians, and further prevents the development of an additional 84 physician-owned hospitals that would be otherwise eligible for Medicare certification.

PHA has an interest in protecting its members directly, and the public indirectly, from any unconstitutional healthcare legislation, and thus it has an interest in supporting the Commonwealth of Virginia in this action.

In the following memorandum, PHA addresses the Commonwealth of Virginia's standing to challenge the PPACA and the merits of the Commonwealth's argument that the individual insurance mandate of the PPACA is unconstitutional.

**MEMORANDUM OF LAW**

**I.     THE COMMONWEALTH OF VIRGINIA HAS STANDING.**

The purpose of standing is to ensure that the parties have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Baker v. Carr*, 369 U.S. 186, 204 (1962). This purpose has been satisfied by the Commonwealth of Virginia. The Commonwealth is uniquely and singularly situated to defend the integrity and enforceability of its own statute, which predated and is in direct conflict with § 1501 of the PPACA.

The Commonwealth does not now resort to *parens patriae* standing. Instead, the Commonwealth's standing derives from her unique position as an injured sovereign. The Commonwealth has a "direct stake" in protecting her sovereign legislative process and creating an enforceable legal code—a code that is now being attacked. *Diamond v. Charles*, 476 U.S. 54, 65 (1986). Indeed, the several states each have a sovereign interest not only in guarding the sanctity of their own legislative processes, but in regulating the health and safety of their citizens. *See Gonzales v. Oregon*, 546 U.S. 243, 270 (2006).

Secretary Sebelius cites "the staggering costs that a broken health care system visits on individual Americans and the nation as a whole." (Mem. of Law in Supp. of Def.'s Mot. to Dismiss 6.) She then argues that Congress's response to this crisis, in particular the individual insurance mandate which she describes as the lynchpin of the legislation, is effectively immune from judicial review.[1] Yet it is in times of national crisis that our Constitutional protections are most dear. As noted by Justice O'Connor in *New York v. United States,* 505 U.S. 144, 158

---

[1] Having admitted the individual insurance mandate is the lynchpin of the PPACA, the more rational approach for the Secretary would be to embrace immediate judicial review.

3

(1992), "the Constitution protects us from our own best intentions: it divides power among sovereigns . . . precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crises of the day."

## II. THE MANDATE IS NOT WITHIN CONGRESS'S CONSTITUTIONAL POWERS.

Section 1501 of the PPACA purports to mandate that individual Virginians purchase health insurance or be subject to a civil penalty. Such an edict is outside the enumerated powers granted Congress by the Constitution, and as such it is unconstitutional and invalid.

Congress's power to regulate "Commerce with foreign Nations, and among the several States, and with the Indian Tribes," U.S. Const. art. I, § 8, has been the subject of litigation for close to two centuries. *See, e.g.*, *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1 (1824); *Gonzalez v. Raich*, 545 U.S. 1 (2005). From its relatively modest beginnings in *Gibbons*, the Supreme Court has gradually expanded the scope of Congress's power to regulate under the clause to encompass virtually all economic activity within the United States. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964). What is clear from recent cases, however, is that, "even under our modern, expansive interpretation of the Commerce Clause, Congress's regulatory authority is not without bounds." *United States v. Morrison*, 529 U.S. 598, 608 (2000). Further, in order for an activity to be the subject of regulation under the Commerce Clause, "it must be some sort of economic endeavor." *Id.* at 611.

The Supreme Court has held that Congress may regulate the use of the channels of interstate commerce, the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though they may come only from intrastate activities, and Congress may even regulate activities having a substantial relation to interstate commerce. *United States*

4

*v. Lopez*, 514 U.S. 549, 558 (1995). The vast array of economic activities subject to regulation have always been just that—activities. The Court has never held that the Commerce Clause empowers Congress to regulate inactivity. The PPACA does not merely purport to regulate how people buy health insurance, or the price they pay, or the terms of the contracts. Instead, it does what Congress has never before dared do—it mandates that individuals affirmatively engage in economic activity where they might otherwise choose not to.

If § 1501 of the PPACA is allowed to stand, it will open the door to a sweeping expansion of federal power. In the future, Congress will not only be able to dictate the terms under which Virginians purchase health insurance or health care services, but also details of a patient's care, including preventative health procedures such as regular exercise and vitamin supplements. If Congress can compel one sort of economic activity that is seen as desirable for the public good, why not another? Ultimately, if Congress were deemed to have Constitutional power to compel the purchase of goods and services, there could be no principled limit to such a power.

It is axiomatic Constitutional law that Congress has only specific, enumerated powers, and that the police power is reserved to the states. *Lopez*, 514 U.S. at 567; *see also United States v. Comstock*, ___ U.S. ____, ____, No. 08-1224, 2010 U.S. Dist. LEXIS 3879 at *38 (2010). In order to find § 1501 to be within the bounds of Congress's powers under the Commerce Clause, it would be necessary to depart from this settled principle of law, and "[p]ile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Lopez*, 514 U.S. at 567.

Both the Commonwealth and Secretary Sebelius rely on the Supreme Court's most recent Commerce Clause case, *Gonzalez v. Raich*, 545 U.S. 1 (2005). *Raich* provides no support for the

5

Secretary's position and in fact demonstrates that Congress's power under the Commerce Clause is limited to the regulation of voluntary economic activity.

In *Raich*, the Supreme Court considered whether Congress had the power under the Commerce Clause to regulate the purely local cultivation and use of marijuana. *Id*. at 5. Distinguishing *Lopez* and *Morrison*, the Court held that in those cases, the activities which Congress had impermissibly sought to regulate (possession of firearms near a school in *Lopez* and gender-motivated violence in *Morrison*) were fundamentally non-economic in nature and thus outside the scope of the Commerce Clause. *Id*. at 24–25. In contrast, the Court concluded that the cultivation of marijuana was in fact economic in nature, and thus local cultivation and consumption was subject to regulation where it was part of a larger scheme to regulate interstate commerce. *Id*. at 22 ("That the regulation ensnares some purely intrastate activity is of no moment. As we have done many times before, we refuse to excise individual components of that larger scheme.").

Yet the Secretary makes an unprecedented inferential leap from the conclusion in *Raich* to the conclusion that Congress can compel individual Virginians to purchase a package of goods and services they neither want nor need. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss 23.) Such an inference is untenable. It is undoubtedly true that the purchase of health insurance and other goods and services related to health care are economic activity as contemplated by *Raich*. There is nothing in *Raich*, however, nor in any other precedent, to support the radical proposition that Congress may *compel* anyone to engage in such economic activity.

The Secretary contends that individuals who choose to remain rationally uninsured while young and healthy are "free riders," because they choose not to engage in the economic activity of purchasing health insurance they do not believe they need. *Id*. at 28. This accusation betrays

6

the Constitutional infirmity of the PPACA. Congress seeks to legislate far beyond its rightful Constitutional authority in order to compel rational economic actors—Virginia citizens—to behave in a manner they have concluded is not in their best interests. Fortunately, the Constitution provides limits on the powers of the national government and a means of enforcing those limits. Section 1501 of the PPACA is outside the bounds of Congress's enumerated powers and thus unconstitutional.

## III.    THE TAXING POWER DOES NOT SAVE THE STATUTE.

The Secretary argues in the alternative that even if the mandate to purchase insurance under § 1501 is not a permissible exercise of Congress's power under the Commerce Clause, it is valid as an exercise of Congress's power to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8.  This argument is unavailing.

First, Congress did not purport to pass the mandate to purchase insurance pursuant to the taxing power. The Supreme Court has given weight to what power Congress purports to exercise when it enacts legislation. In *Sozinsky v. United States*, 300 U.S. 506 (1937), the Court considered whether provisions of the National Firearms Act that provided for confiscatory taxation of certain classes of firearms was a valid exercise of the taxing power. Concluding that, on its face, the National Firearms Act appeared to be a valid tax, the Court held that it would not look behind Congress's purported exercise of the taxing power. *Id*. at 513. The import of this case is that courts should not lightly disregard Congress's purported motive in passing a piece of legislation which appears valid on its face. Here, § 1501 does not purport to be a tax. If anything, *Sozinsky* supports the proposition that the Court should not ignore Congress's claim that the mandate is an exercise of power pursuant to the Commerce Clause.

7

Even if the Court were to conclude that it should analyze the mandate to purchase insurance as if Congress had passed it pursuant to the taxing power, it would still be invalid. Unlike the statute in *Sozinsky*, the statute here is not valid on its face. The Supreme Court's opinion in the *Child Labor Tax Case*, 259 U.S. 20 (1922), is instructive. There an employer had been assessed a 10% tax on its annual profits because it had employed a worker younger than fourteen during the year. *Id.* at 34. The Court found that the statute in question was not on its face a valid exercise of the taxing power. *Id.* at 44. The court considered several features of the statute in reaching its conclusion. First, the Court found that it "provides a heavy exaction for a departure from a detailed course of conduct in business." *Id.* at 36. Next, the Court found it significant that "the amount [was] not to be proportioned in any degree to the extent or frequency of the departures, but [was] to be paid by the employer in full measure whether he employs five hundred children for a year, or employs only one for a day." *Id.* Other factors were the presence of a scienter requirement, where the violation had to be "knowing" and that the factory was subject to inspection by the relevant regulatory authority. *Id.* at 37.

The features of the mandate to purchase insurance under § 1501 are strikingly similar. By calling the mandate a penalty, Congress has made it abundantly clear that its goal is to compel a particular course of conduct. Further, the penalty is not proportional to the measure of the violation—it is a flat penalty. It has no relationship to the cost the citizen would have to pay to purchase the requisite insurance. It is assessed irrespective of the number of months during the year an individual is without insurance. These striking similarities between the statute at issue in the *Child Labor Tax Case* and the insurance mandate of the PPACA demonstrate that the mandate is not a valid exercise of the taxing power on its face. The words of Chief Justice Marshall are especially helpful:

> [S]hould Congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not intrusted to the government; it would become the painful duty of this tribunal, should a case requiring such a decision come before it, to say, that such an act was not the law of the land.

*Id*. at 40 (*quoting McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 423 (1819)).

Any other outcome would provide Congress with a de facto police power. If Congress could pass a statute which imposes a monetary penalty in the guise of a tax on persons who fail to affirmatively act by purchasing health insurance, what principled limit could then be imposed on such a power? The General Welfare clause would become the new Commerce Clause by which Congress could presumably assess many penalties against Americans for failing to obtain annual physicals, to take preventative medications, or to undertake virtually any other activity that could potentially interfere with a physician's independent judgment or assessment of a patient.

Finally, even were the mandate to purchase insurance an otherwise permissible tax, it would be unconstitutional because it is not apportioned among the states. The grant of express powers to Congress in the Constitution is specifically limited with respect to taxation: "No capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken." U.S. Const. art. I, § 9. The Supreme Court construed the rule of apportionment in *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 583 (1895): "The requirement of the Constitution is that no direct tax shall be laid otherwise than by apportionment." The Court went on to find that a tax on income from investments was a direct tax, and thus could not be constitutionally imposed by Congress absent apportionment among the states. *Id*. at 583. An exception to the general rule that Congress cannot impose direct taxes without apportionment was carved out by the Sixteenth Amendment: "The Congress shall have

power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S. Const. amend. XVI.

The penalty to be assessed against persons who decline to purchase health insurance, however, cannot reasonably be considered an income tax. It is in no way related to an individual's income. It is imposed in equal amount to all individuals, except the very poor. *Pollock* expressly held that a capitation tax was a direct tax. 157 U.S. at 579. A capitation tax is the same thing as a poll tax, which is to say "a fixed tax levied on each person within a jurisdiction." *Black's Law Dictionary* 1594, 1596 (Deluxe 9th ed. 2009). The penalty to be assessed under § 1501 is such a tax and is thus beyond the power of Congress to enact unless is apportioned among the states. Given this, it is invalid. As the Court wrote in *Pollock*: "[A]cceptance of the rule of apportionment was one of the compromises which made the adoption of the Constitution possible, and secured the creation of that dual form of government, so elastic and so strong, which has thus far survived in unabated vigor." 157 U.S. at 583.

## **CONCLUSION**

For these reasons, the requirement of § 1501 of the PPACA that individual citizens purchase health insurance or be subject to a monetary penalty is unconstitutional. PHA therefore requests this Court to deny Secretary Sebelius's Motion to Dismiss.

    Respectfully submitted,

    /s/    Scott C. Oostdyk

Scott C. Oostdyk (VA Bar # 28512)
James L. Sanderlin (VA Bar # 05878)
J. Tracy Walker, IV (VA Bar # 31355)
H. Carter Redd (VA Bar # 34392)
Virginia L. Hudson (Nesbitt) (VA Bar # 73263)
Matthew D. Fender (VA Bar # 76717)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
soostdyk@mcguirewoods.com
jsanderlin@mcguirewoods.com
twalker@mcguirewoods.com
credd@mcguirewoods.com
vnesbitt@mcguirewoods.com
mfender@mcguirewoods.com

ATTORNEYS FOR AMICUS CURIAE
PHYSICIAN HOSPITALS OF AMERICA

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of June, 2010, I electronically filed the foregoing Brief of Amicus Curiae Physician Hospitals of America in Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Earle Duncan Getchell, Jr.
Charles E. James, Jr.
Stephen R. McCullough
Wesley Glenn Russell, Jr.
Office of the Virginia Attorney General
900 E. Main Street
Richmond, VA 23219

Jonathan Holland Hambrick
Office of the U.S. Attorney
600 E. Main Stret, Suite 1800
Richmond, VA 23219

Erika Myers
Ian Gershengorn
Joel McElvain
Sheila M. Lieber
Department of Justice Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7332
Washington, DC 20001

                                                         /s/    Scott C. Oostdyk
Scott C. Oostdyk (VA Bar # 28512)
MCGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
soostdyk@mcguirewoods.com