**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| COMMONWEALTH OF VIRGINIA, | ) | |
| ex rel. Kenneth T. Cuccinelli, II, in his official | ) | |
| capacity as Attorney General of Virginia, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10-cv-00188-HEH |
| | ) | |
| KATHLEEN SEBELIUS, Secretary of the | ) | |
| Department of Health and Human Services, | ) | |
| in her official capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**APPENDIX OF STATUTORY MATERIALS**

**Table of Contents**

Pub. L. No. 111-148, § 1501(a), *as amended by id.*, § 10106(a) ....................................................1

26 U.S.C. § 5000A, *as enacted by* Pub. L. No. 111-148, §§ 1501, 10106,
    *and as amended by* Pub. L. No. 111-152, §§ 1002, 1004 ......................................................3

26 U.S.C. § 7421 (Anti-Injunction Act) .......................................................................11

28 U.S.C. § 2201 (Declaratory Judgment Act) ..............................................................11

42 U.S.C. § 1395dd (Emergency Medical Treatment and Labor Act) ..........................................12

42 U.S.C. § 300gg *et seq.*, *as amended by* Pub. L. No. 111-148, §§ 1201, 10103 .......................14

Va. Code Ann. § 38.2-3430.1:1 (2010) .......................................................................18

**Pub. L. No. 111-148, §§ 1501(a), 10106(a).**

**SEC. 1501. Requirement to Maintain Minimum Essential Coverage.**

(a) FINDINGS.—Congress makes the following findings:

(1) IN GENERAL.—The individual responsibility requirement provided for in this section (in this subsection referred to as the ''requirement'') is commercial and economic in nature, and substantially affects interstate commerce, as a result of the effects described in paragraph (2).

(2) EFFECTS ON THE NATIONAL ECONOMY AND INTERSTATE COMMERCE.—The effects described in this paragraph are the following:

(A) The requirement regulates activity that is commercial and economic in nature: economic and financial decisions about how and when health care is paid for, and when health insurance is purchased. In the absence of the requirement, some individuals would make an economic and financial decision to forego health insurance coverage and attempt to self-insure, which increases financial risks to households and medical providers.

(B) Health insurance and health care services are a significant part of the national economy. National health spending is projected to increase from $2,500,000,000,000, or 17.6 percent of the economy, in 2009 to $4,700,000,000,000 in 2019. Private health insurance spending is projected to be $854,000,000,000 in 2009, and pays for medical supplies, drugs, and equipment that are shipped in interstate commerce. Since most health insurance is sold by national or regional health insurance companies, health insurance is sold in interstate commerce and claims payments flow through interstate commerce.

(C) The requirement, together with the other provisions of this Act, will add millions of new consumers to the health insurance market, increasing the supply of, and demand for, health care services, and will increase the number and share of Americans who are insured.

(D) The requirement achieves near-universal coverage by building upon and strengthening the private employer-based health insurance system, which covers 176,000,000 Americans nationwide. In Massachusetts, a similar requirement has strengthened private employer-based coverage. Despite the economic downturn, the number of workers offered employer-based coverage has actually increased.

(E) The economy loses up to $207,000,000,000 a year because of the poorer health and shorter lifespan of the uninsured. By significantly reducing the number of the uninsured, the requirement, together with the other provisions of this Act, will significantly reduce this economic cost.

(F) The cost of providing uncompensated care to the uninsured was $43,000,000,000 in 2008. To pay for this cost, health care providers pass on the cost to

1

private insurers, which pass on the cost to families. This costshifting increases family premiums by on average over $1,000 a year. By significantly reducing the number of the uninsured, the requirement, together with the other provisions of this Act, will lower health insurance premiums.

(G) 62 percent of all personal bankruptcies are caused in part by medical expenses. By significantly increasing health insurance coverage, the requirement, together with the other provisions of this Act, will improve financial security for families.

(H) Under the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1001 et seq.), the Public Health Service Act (42 U.S.C. 201 et seq.), and this Act, the Federal Government has a significant role in regulating health insurance. The requirement is an essential part of this larger regulation of economic activity, and the absence of the requirement would undercut Federal regulation of the health insurance market.

(I) Under sections 2704 and 2705 of the Public Health Service Act (as added by section 1201 of this Act), if there were no requirement, many individuals would wait to purchase health insurance until they needed care. By significantly increasing health insurance coverage, the requirement, together with the other provisions of this Act, will minimize this adverse selection and broaden the health insurance risk pool to include healthy individuals, which will lower health insurance premiums. The requirement is essential to creating effective health insurance markets in which improved health insurance products that are guaranteed issue and do not exclude coverage of preexisting conditions can be sold.

(J) Administrative costs for private health insurance, which were $90,000,000,000 in 2006, are 26 to 30 percent of premiums in the current individual and small group markets. By significantly increasing health insurance coverage and the size of purchasing pools, which will increase economies of scale, the requirement, together with the other provisions of this Act, will significantly reduce administrative costs and lower health insurance premiums. The requirement is essential to creating effective health insurance markets that do not require underwriting and eliminate its associated administrative costs.

(3) SUPREME COURT RULING.—In United States v. South-Eastern Underwriters Association (322 U.S. 533 (1944)), the Supreme Court of the United States ruled that insurance is interstate commerce subject to Federal regulation.

**26 U.S.C. § 5000A.  Requirement to Maintain Minimum Essential Coverage.**
*(As enacted by Pub. L. No. 111-148, §§ 1501, 10106, and as amended by Pub. L. No. 111-152, §§ 1002, 1004)*

(a) REQUIREMENT TO MAINTAIN MINIMUM ESSENTIAL COVERAGE.—
An applicable individual shall for each month beginning after 2013 ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month.

(b) SHARED RESPONSIBILITY PAYMENT.—

(1) IN GENERAL.—If a taxpayer who is an applicable individual, or an applicable individual for whom the taxpayer is liable under paragraph (3), fails to meet the requirement of subsection (a) for 1 or more months, then, except as provided in subsection (e), there is hereby imposed on the taxpayer a penalty with respect to such failures in the amount determined under subsection (c).

(2) INCLUSION WITH RETURN.—Any penalty imposed by this section with respect to any month shall be included with a taxpayer's return under chapter 1 for the taxable year which includes such month.

(3) PAYMENT OF PENALTY.—If an individual with respect to whom a penalty is imposed by this section for any month—

(A) is a dependent (as defined in section 152) of another taxpayer for the other taxpayer's taxable year including such month, such other taxpayer shall be liable for such penalty, or

(B) files a joint return for the taxable year including such month, such individual and the spouse of such individual shall be jointly liable for such penalty.

(c) AMOUNT OF PENALTY.—

(1) IN GENERAL.—The amount of the penalty imposed by this section on any taxpayer for any taxable year with respect to failures described in subsection (b)(1) shall be equal to the lesser of—

(A) the sum of the monthly penalty amounts determined under paragraph (2) for months in the taxable year during which 1 or more such failures occurred, or

(B) an amount equal to the national average premium for qualified health plans which have a bronze level of coverage, provide coverage for the applicable family size involved, and are offered through Exchanges for plan years beginning in the calendar year with or within which the taxable year ends.

(2) MONTHLY PENALTY AMOUNTS.—For purposes of paragraph (1)(A), the monthly penalty amount with respect to any taxpayer for any month during which any failure described in subsection (b)(1) occurred is an amount equal to $1/12$ of the greater of the following amounts:

(A) FLAT DOLLAR AMOUNT.—An amount equal to the lesser of—

(i) the sum of the applicable dollar amounts for all individuals with respect to whom such failure occurred during such month, or

(ii) 300 percent of the applicable dollar amount (determined without regard to paragraph (3)(C)) for the calendar year with or within which the taxable year ends.

(B) PERCENTAGE OF INCOME.—An amount equal to the following percentage of the excess of the taxpayer's household income for the taxable year over the amount of gross income specified in section 6012(a)(1) with respect to the taxpayer for the taxable year:

(i) 1.0 percent for taxable years beginning in 2014.

(ii) 2.0 percent for taxable years beginning in 2015.

(iii) 2.5 percent for taxable years beginning after 2015.

(3) APPLICABLE DOLLAR AMOUNT.—For purposes of paragraph (1)—

(A) IN GENERAL.—Except as provided in subparagraphs (B) and (C), the applicable dollar amount is $695.

(B) PHASE IN.—The applicable dollar amount is $95 for 2014 and $325 for 2015.

(C) SPECIAL RULE FOR INDIVIDUALS UNDER AGE 18.—If an applicable individual has not attained the age of 18 as of the beginning of a month, the applicable dollar amount with respect to such individual for the month shall be equal to one-half of the applicable dollar amount for the calendar year in which the month occurs.

(D) INDEXING OF AMOUNT.—In the case of any calendar year beginning after 2016, the applicable dollar amount shall be equal to $695, increased by an amount equal to—

(i) $695, multiplied by

(ii) the cost-of-living adjustment determined under section 1(f)(3) for the calendar year, determined by substituting 'calendar year 2015' for 'calendar year 1992' in subparagraph (B) thereof.

If the amount of any increase under clause (i) is not a multiple of $50, such increase shall be rounded to the next lowest multiple of $50.

4

(4) TERMS RELATING TO INCOME AND FAMILIES.—For purposes of this section—

    (A) FAMILY SIZE.—The family size involved with respect to any taxpayer shall be equal to the number of individuals for whom the taxpayer is allowed a deduction under section 151 (relating to allowance of deduction for personal exemptions) for the taxable year.

    (B) HOUSEHOLD INCOME.—The term 'household income' means, with respect to any taxpayer for any taxable year, an amount equal to the sum of—

        (i) the modified adjusted gross income of the taxpayer, plus
        (ii) the aggregate modified adjusted gross incomes of all other individuals who—

            (I) were taken into account in determining the taxpayer's family size under paragraph (1), and
            (II) were required to file a return of tax imposed by section 1 for the taxable year.

    (C) MODIFIED ADJUSTED GROSS INCOME.—The term 'modified adjusted gross income' means adjusted gross income increased by—

        (i) any amount excluded from gross income under section 911, and
        (ii) any amount of interest received or accrued by the taxpayer during the taxable year which is exempt from tax.

(d) APPLICABLE INDIVIDUAL.—For purposes of this section—

    (1) IN GENERAL.—The term 'applicable individual' means, with respect to any month, an individual other than an individual described in paragraph (2), (3), or (4).

    (2) RELIGIOUS EXEMPTIONS.—

    (A) RELIGIOUS CONSCIENCE EXEMPTION.—Such term shall not include any individual for any month if such individual has in effect an exemption under section 1311(d)(4)(H) of the Patient Protection and Affordable Care Act which certifies that such individual is—

        (i) a member of a recognized religious sect or division thereof which is described in section 1402(g)(1), and
        (ii) an adherent of established tenets or teachings of such sect or division as described in such section.

    (B) HEALTH CARE SHARING MINISTRY.—

(i) IN GENERAL.—Such term shall not include any individual for any month if such individual is a member of a health care sharing ministry for the month.

(ii) HEALTH CARE SHARING MINISTRY.—The term 'health care sharing ministry' means an organization—

(I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a),

(II) members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed,

(III) members of which retain membership even after they develop a medical condition,

(IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and

(V) which conducts an annual audit which is performed by an independent certified public accounting firm in accordance with generally accepted accounting principles and which is made available to the public upon request.

(3) INDIVIDUALS NOT LAWFULLY PRESENT.—Such term shall not include an individual for any month if for the month the individual is not a citizen or national of the United States or an alien lawfully present in the United States.

(4) INCARCERATED INDIVIDUALS.—Such term shall not include an individual for any month if for the month the individual is incarcerated, other than incarceration pending the disposition of charges.

(e) EXEMPTIONS.—No penalty shall be imposed under subsection (a) with respect to—

(1) INDIVIDUALS WHO CANNOT AFFORD COVERAGE.—

(A) IN GENERAL.—Any applicable individual for any month if the applicable individual's required contribution (determined on an annual basis) for coverage for the month exceeds 8 percent of such individual's household income for the taxable year described in section 1412(b)(1)(B) of the Patient Protection and Affordable Care Act. For purposes of applying this subparagraph, the taxpayer's household income shall be increased by any exclusion from gross income for any portion of the required contribution made through a salary reduction arrangement.

(B) REQUIRED CONTRIBUTION.—For purposes of this paragraph, the term 'required contribution' means—

6

(i) in the case of an individual eligible to purchase minimum essential coverage consisting of coverage through an eligible-employer-sponsored plan, the portion of the annual premium which would be paid by the individual (without regard to whether paid through salary reduction or otherwise) for self-only coverage, or

(ii) in the case of an individual eligible only to purchase minimum essential coverage described in subsection (f)(1)(C), the annual premium for the lowest cost bronze plan available in the individual market through the Exchange in the State in the rating area in which the individual resides (without regard to whether the individual purchased a qualified health plan through the Exchange), reduced by the amount of the credit allowable under section 36B for the taxable year (determined as if the individual was covered by a qualified health plan offered through the Exchange for the entire taxable year).

(C) SPECIAL RULES FOR INDIVIDUALS RELATED TO EMPLOYEES.— For purposes of subparagraph (B)(i), if an applicable individual is eligible for minimum essential coverage through an employer by reason of a relationship to an employee, the determination under subparagraph (A) shall be made by reference to required contribution of the employee.

(D) INDEXING.—In the case of plan years beginning in any calendar year after 2014, subparagraph (A) shall be applied by substituting for '8 percent' the percentage the Secretary of Health and Human Services determines reflects the excess of the rate of premium growth between the preceding calendar year and 2013 over the rate of income growth for such period.

(2) TAXPAYERS WITH INCOME BELOW FILING THRESHOLD.—Any applicable individual for any month during a calendar year if the individual's household income for the taxable year described in section 1412(b)(1)(B) of the Patient Protection and Affordable Care Act is less than the amount of gross income specified in section 6012(a)(1) with respect to the taxpayer.

(3) MEMBERS OF INDIAN TRIBES.—Any applicable individual for any month during which the individual is a member of an Indian tribe (as defined in section 45A(c)(6)).

(4) MONTHS DURING SHORT COVERAGE GAPS.—

(A) IN GENERAL.—Any month the last day of which occurred during a period in which the applicable individual was not covered by minimum essential coverage for a continuous period of less than 3 months.

(B) SPECIAL RULES.—For purposes of applying this paragraph—

(i) the length of a continuous period shall be determined without regard to the calendar years in which months in such period occur,

(ii) if a continuous period is greater than the period allowed under subparagraph (A), no exception shall be provided under this paragraph for any month in the period, and

(iii) if there is more than 1 continuous period described in subparagraph (A) covering months in a calendar year, the exception provided by this paragraph shall only apply to months in the first of such periods.

The Secretary shall prescribe rules for the collection of the penalty imposed by this ection in cases where continuous periods include months in more than 1 taxable year.

(5) HARDSHIPS.—Any applicable individual who for any month is determined by the Secretary of Health and Human Services under section 1311(d)(4)(H) to have suffered a hardship with respect to the capability to obtain coverage under a qualified health plan.

(f) MINIMUM ESSENTIAL COVERAGE.—For purposes of this section—

(1) IN GENERAL.—The term 'minimum essential coverage' means any of the following:

(A) GOVERNMENT SPONSORED PROGRAMS.—Coverage under—

(i) the Medicare program under part A of title XVIII of the Social Security Act,
(ii) the Medicaid program under title XIX of the Social Security Act,
(iii) the CHIP program under title XXI of the Social Security Act,
(iv) the TRICARE for Life program,
(v) the veteran's health care program under chapter 17 of title 38, United States Code, or
(vi) a health plan under section 2504(e) of title 22, United States Code (relating to Peace Corps volunteers).

(B) EMPLOYER-SPONSORED PLAN.—Coverage under an eligible employer-sponsored plan.

(C) PLANS IN THE INDIVIDUAL MARKET.—Coverage under a health plan offered in the individual market within a State.

(D) GRANDFATHERED HEALTH PLAN.—Coverage under a grandfathered health plan.

(E) OTHER COVERAGE.—Such other health benefits coverage, such as a State health benefits risk pool, as the Secretary of Health and Human Services, in coordination with the Secretary, recognizes for purposes of this subsection.

(2) ELIGIBLE EMPLOYER-SPONSORED PLAN.—The term 'eligible employer-sponsored plan' means, with respect to any employee, a group health plan or group health insurance coverage offered by an employer to the employee which is—

    (A) a governmental plan (within the meaning of section 2791(d)(8) of the Public Health Service Act), or

    (B) any other plan or coverage offered in the small or large group market within a State.

Such term shall include a grandfathered health plan described in paragraph (1)(D) offered in a group market.

(3) EXCEPTED BENEFITS NOT TREATED AS MINIMUM ESSENTIAL COVERAGE.—The term 'minimum essential coverage' shall not include health insurance coverage which consists of coverage of excepted benefits—

    (A) described in paragraph (1) of subsection (c) of section 2791 of the Public Health Service Act; or

    (B) described in paragraph (2), (3), or (4) of such subsection if the benefits are provided under a separate policy, certificate, or contract of insurance.

(4) INDIVIDUALS RESIDING OUTSIDE UNITED STATES OR RESIDENTS OF TERRITORIES.—Any applicable individual shall be treated as having minimum essential coverage for any month—

    (A) if such month occurs during any period described in subparagraph (A) or (B) of section 911(d)(1) which is applicable to the individual, or

    (B) if such individual is a bona fide resident of any possession of the United States (as determined under section 937(a)) for such month.

(5) INSURANCE-RELATED TERMS.—Any term used in this section which is also used in title I of the Patient Protection and Affordable Care Act shall have the same meaning as when used in such title.

(g) ADMINISTRATION AND PROCEDURE.—

(1) IN GENERAL.—The penalty provided by this section shall be paid upon notice and demand by the Secretary, and except as provided in paragraph (2), shall be assessed and collected in the same manner as an assessable penalty under subchapter B of chapter 68.

(2) SPECIAL RULES.—Notwithstanding any other provision of law—

(A) WAIVER OF CRIMINAL PENALTIES.—In the case of any failure by a taxpayer to timely pay any penalty imposed by this section, such taxpayer shall not be subject to any criminal prosecution or penalty with respect to such failure.

(B) LIMITATIONS ON LIENS AND LEVIES.—The Secretary shall not—
      (i) file notice of lien with respect to any property of a taxpayer by reason of any failure to pay the penalty imposed by this section, or
      (ii) levy on any such property with respect to such failure.

**26 U.S.C. § 7421.  Prohibition of suits to restrain assessment or collection.**

**(a) Tax.**–Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, nosuit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

\*\*\*

**28 U.S.C. § 2201. Creation of remedy.**

**(a)** In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

\*\*\*

**42 U.S.C. § 1395dd.  Examination and treatment for emergency medical conditions and women in labor**

(a) Medical screening requirement.  In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

(b) Necessary stabilizing treatment for emergency medical conditions and labor.

(1) In general.  If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either--

**(A)** within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

**(B)** for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

\*\*\*

(e) Definitions.  In this section:

**(1)** The term "emergency medical condition" means--

**(A)** a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--

**(i)** placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
**(ii)** serious impairment to bodily functions, or
**(iii)** serious dysfunction of any bodily organ or part; or

**(B)** with respect to a pregnant woman who is having contractions--

**(i)** that there is inadequate time to effect a safe transfer to another hospital before delivery, or
**(ii)** that transfer may pose a threat to the health or safety of the woman or the unborn child.

**(2)** The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.

12

**(3)(A)** The term "to stabilize" means, with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), to deliver (including the placenta).

**(B)** The term "stabilized" means, with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), that the woman has delivered (including the placenta).

\*\*\*

(h) No delay in examination or treatment.  A participating hospital may not delay provision of an appropriate medical screening examination required under subsection (a) of this section or further medical examination and treatment required under subsection (b) of this section in order to inquire about the individual's method of payment or insurance status.

13

**Public Health Service Act, §§ 2701-08 (42 U.S.C. §§ 300gg et seq.)**
(*as amended by Pub. L. No. 111-148, §§ 1201, 10103*)

**SEC. 2701. Fair Health Insurance Premiums.**

(a) PROHIBITING DISCRIMINATORY PREMIUM RATES.—

    (1) IN GENERAL.—With respect to the premium rate charged by a health insurance issuer for health insurance coverage offered in the individual or small group market—

        (A) such rate shall vary with respect to the particular plan or coverage involved only by—

            (i) whether such plan or coverage covers an individual or family;
            (ii) rating area, as established in accordance with paragraph (2);
            (iii) age, except that such rate shall not vary by more than 3 to 1 for adults (consistent with section 2707(c)); and
            (iv) tobacco use, except that such rate shall not vary by more than 1.5 to 1; and

        (B) such rate shall not vary with respect to the particular plan or coverage involved by any other factor not described in subparagraph (A).

    (2) RATING AREA.—

        (A) IN GENERAL.—Each State shall establish 1 or more rating areas within that State for purposes of applying the requirements of this title.

        (B) SECRETARIAL REVIEW.—The Secretary shall review the rating areas established by each State under subparagraph (A) to ensure the adequacy of such areas for purposes of carrying out the requirements of this title.  If the Secretary determines a State's rating areas are not adequate, or that a State does not establish such areas, the Secretary may establish rating areas for that State.

    (3) PERMISSIBLE AGE BANDS.—The Secretary, in consultation with the National Association of Insurance Commissioners, shall define the permissible age bands for rating purposes under paragraph (1)(A)(iii).

    (4) APPLICATION OF VARIATIONS BASED ON AGE OR TOBACCO USE.—With respect to family coverage under a group health plan or health insurance coverage, the rating variations permitted under clauses (iii) and (iv) of paragraph (1)(A) shall be applied based on the portion of the premium that is attributable to each family member covered under the plan or coverage.

    (5) SPECIAL RULE FOR LARGE GROUP MARKET.—If a State permits health insurance issuers that offer coverage in the large group market in the State to offer such coverage

through the State Exchange (as provided for under section 1312(f)(2)(B) of the Patient Protection and Affordable Care Act), the provisions of this subsection shall apply to all coverage offered in such market (other than selfinsured group health plans offered in such market) in the State.

## SEC. 2702. Guaranteed Availability of Coverage.

(a) GUARANTEED ISSUANCE OF COVERAGE IN THE INDIVIDUAL AND GROUP MARKET.—Subject to subsections (b) through (e), each health insurance issuer that offers health insurance coverage in the individual or group market in a State must accept every employer and individual in the State that applies for such coverage.

(b) ENROLLMENT.—

(1) RESTRICTION.—A health insurance issuer described in subsection (a) may restrict enrollment in coverage described in such subsection to open or special enrollment periods.

(2) ESTABLISHMENT.—A health insurance issuer described in subsection (a) shall, in accordance with the regulations promulgated under paragraph (3), establish special enrollment periods for qualifying events (under section 603 of the Employee Retirement Income Security Act of 1974).

(3) REGULATIONS.—The Secretary shall promulgate regulations with respect to enrollment periods under paragraphs (1) and (2).

## SEC. 2703. Guaranteed Renewability of Coverage.

(a) IN GENERAL.—Except as provided in this section, if a health insurance issuer offers health insurance coverage in the individual or group market, the issuer must renew or continue in force such coverage at the option of the plan sponsor or the individual, as applicable.

## SEC. 2704. Prohibition of Preexisting Condition Exclusions or Other Discrimination Based on Health Status.

(a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage may not impose any preexisting condition exclusion with respect to such plan or coverage.

***

## SEC. 2705. Prohibiting Discrimination Against Individual Participants and Beneficiaries Based on Health Status.

(a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan or coverage based on any of the

following health status-related factors in relation to the individual or a dependent of the individual:

    (1) Health status.
    (2) Medical condition (including both physical and mental illnesses).
    (3) Claims experience.
    (4) Receipt of health care.
    (5) Medical history.
    (6) Genetic information.
    (7) Evidence of insurability (including conditions arising out of acts of domestic violence).
    (8) Disability.
    (9) Any other health status-related factor determined appropriate by the Secretary.

***

**SEC. 2706. Non-Discrimination in Health Care.**

(a) PROVIDERS.—A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law. This section shall not require that a group health plan or health insurance issuer contract with any health care provider willing to abide by the terms and conditions for participation established by the plan or issuer. Nothing in this section shall be construed as preventing a group health plan, a health insurance issuer, or the Secretary from establishing varying reimbursement rates based on quality or performance measures.

(b) INDIVIDUALS.—The provisions of section 1558 of the Patient Protection and Affordable Care Act (relating to non-discrimination) shall apply with respect to a group health plan or health insurance issuer offering group or individual health insurance coverage.

**SEC. 2707. Comprehensive Health Insurance Coverage.**

(a) COVERAGE FOR ESSENTIAL HEALTH BENEFITS PACKAGE.—A health insurance issuer that offers health insurance coverage in the individual or small group market shall ensure that such coverage includes the essential health benefits package required under section 1302(a) of the Patient Protection and Affordable Care Act.

(b) COST-SHARING UNDER GROUP HEALTH PLANS.—A group health plan shall ensure that any annual cost-sharing imposed under the plan does not exceed the limitations provided for under paragraphs (1) and (2) of section 1302(c).

(c) CHILD-ONLY PLANS.—If a health insurance issuer offers health insurance coverage in any level of coverage specified under section 1302(d) of the Patient Protection and Affordable Care

Act, the issuer shall also offer such coverage in that level as a plan in which the only enrollees are individuals who, as of the beginning of a plan year, have not attained the age of 21.

(d) DENTAL ONLY.—This section shall not apply to a plan described in section 1302(d)(2)(B)(ii)(I).

**SEC. 2708. Prohibition on Excessive Waiting Periods.**

A group health plan and a health insurance issuer offering group health insurance coverage shall not apply any waiting period (as defined in section 2704(b)(4)) that exceeds 90 days.

**Va. Code Ann. § 38.2-3430.1:1.  Health insurance coverage not required.**

No resident of this Commonwealth, regardless of whether he has or is eligible for health insurance coverage under any policy or program provided by or through his employer, or a plan sponsored by the Commonwealth or the federal government, shall be required to obtain or maintain a policy of individual insurance coverage except as required by a court or the Department of Social Services where an individual is named a party in a judicial or administrative proceeding. No provision of this title shall render a resident of this Commonwealth liable for any penalty, assessment, fee, or fine as a result of his failure to procure or obtain health insurance coverage. This section shall not apply to individuals voluntarily applying for coverage under a state-administered program pursuant to Title XIX or Title XXI of the Social Security Act. This section shall not apply to students being required by an institution of higher education to obtain and maintain health insurance as a condition of enrollment. Nothing herein shall impair the rights of persons to privately contract for health insurance for family members or former family members.